**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 21, 2016.**

_____
CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-53097-CAG |
| | § | |
| RAYMOND A. CRAWFORD AND | § | |
| DEBRA ANN CRAWFORD, | § | |
| | § | CHAPTER 13 |
| Debtors. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN (ECF NO. 11)**

Came on to be considered the above-numbered bankruptcy case, and, in particular, the Chapter 13 Trustee's Objection to Confirmation of Chapter 13 Plan (ECF No. 11).[1] The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1408(1). This matter is referred to this Court under the District's Standing Order of Reference. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L)(confirmation of plans) in which the Court may enter a final order. The Court notes that, under the Supreme Court's decision in *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686 (2015), this Court has the authority to hear and enter orders regarding a debtor's chapter 13 plan; but that an order denying

---

[1] "ECF No." denotes electronic court filing number and represents the court filing number where the document appears on the Court's electronic docket sheet.

1

confirmation of a chapter 13 plan is not a final order unless the bankruptcy case is also dismissed. The Court finds that this is a contested matter as defined under Fed. R. Bankr. P. 9014. As such, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The Court took this matter under advisement and finds that the Chapter 13 Trustee's (the "Trustee") Objection should be GRANTED.

## BACKGROUND

Debtors Raymond and Debra Crawford filed chapter 13 bankruptcy on December 29, 2015 (ECF No. 1). On the same day, Debtors filed their Schedules, Statement of Financial Affairs ("SOFA"), and chapter 13 plan (ECF Nos. 1 and 2). Pursuant to the Chapter 13 Form Plan used in the San Antonio Division, Debtors propose to pay 100% of all of their allowed administrative, secured, priority, and nonpriority unsecured claims (ECF No. 2, p. 6). The proposed Plan payment is $1,900.00 per month and the Plan length is 60 months. (*Id*. at pp.6–7).[2]

The Trustee filed her Objection on February 8, 2016, arguing that, given the Debtors' excess disposable income, Debtors should agree that the chapter 13 plan cannot be modified or changed unless it continues to provide for full payment of unsecured claims (ECF No. 11). Further, the Trustee argues that Debtors must pay all claims in full to receive a discharge under § 1328(a).[3]

No evidence was taken at the confirmation hearing, although the Trustee provided the Court with additional information that Debtors do not dispute. Debtors previously filed a chapter 13 case on January 19, 2007, and received a chapter 13 discharge on September 6, 2013 (Bankruptcy No. 07-50131-cag). The plan in that case made a 12% distribution to unsecured

---

[2] Debtors have an applicable commitment period ("ACP") of 60 months. According to Debtors' Schedules "I" and "J", Debtors have net income of $9,181.00 and net expenses of $6,201.00. After deducting the proposed plan payment of $1,900.00, Debtors would have additional disposable income of $1,097.00 per month, or $65,820.00 over the duration of the Plan. If Debtors committed all of their disposable income to creditors, the plan length could be reduced to 48 months.

[3] Unless otherwise noted, all references are to 11 U.S.C. § *et seq*.

creditors. The IRS's second amended proof of claim filed in that case indicated a total tax liability of $78,912.33. Of that amount, the IRS had a secured claim in the amount of $20,140.33[4], an unsecured priority claim in the amount of $11,638.03, and an unsecured general claim in the amount of $47,133.97. The IRS's claim was for individual income liability (Form 1040) for tax years 1984, 1992, 1997–2006, plus the accrual of statutory penalty and interest under I.R.C. §§ 6601 and 6651. The chapter 13 trustee in that case filed three motions to dismiss alleging non-payment of plan payments or non-compliance with other Bankruptcy Code provisions.[5]

In Debtors' present case, the IRS filed its original proof of claim in the total amount of $84,228.36. Of that amount, the IRS has a secured claim in the amount of $26,177.00, an unsecured priority claim in the amount of $7,094.67, and an unsecured general claim in the amount of $50,956.69. The claim consists of unpaid individual income taxes (Form 1040) for 2007-2014, plus statutory penalties and interest. In sum, Debtors have accrued unpaid tax liabilities for 1984, 1992, and 1997–2014 (plus penalty and interest) in the amount of $163,140.69.

## PARTIES' CONTENTIONS

The Trustee argues that, because Debtors have excess disposable income and have accrued tax liabilities for every tax year for 1997–2014, Debtors should be required to pay off their plan earlier than the 60 months proposed. The Trustee argues that the creditors risk losing payments of additional disposable income if Debtors are unable to complete their plan. The Trustee calculates that, based upon the total amount of Debtors' projected disposable income, Debtors could complete their Plan within 48 months. Further, the Trustee maintains that the

---

[4]The IRS filed notices of federal tax liens under I.R.C. § 6323(f) and Treas. Reg. 301.6323(f)-1.
[5]Pursuant to the Agreed Order Denying the Trustee's Motion to Dismiss, the Plan term was extended to 63 months.

Court can impose the additional condition that, should Debtors be allowed to pay their claims over 60 months without dedicating all their disposable income to the chapter 13 plan, then Debtors shall receive their discharge only if Debtors pay 100% of all allowed unsecured claims. Also, the Trustee asks that Debtors be barred from modifying their chapter 13 plan unless this proposed modification continues to pay unsecured claims in full.

Debtors argue that the proposed Court imposed conditions are not permitted under the Code and run afoul of § 1325(b)(1), which provides, in summary form, that the Court shall confirm a plan if the debtor provides for all of the debtor's projected disposable income over the applicable commitment period (60 months) or pays all unsecured claims in full. Debtors argue that once § 1325(b)(1) is met, the Court must confirm Debtors' chapter 13 plan as proposed without further conditions. Debtors also argue that, under *Law v. Siegel*, 134 S. Ct. 1188 (2014), the Court cannot impose any additional requirements on confirmation based upon equitable grounds under § 105(a).

## FINDINGS OF FACT

No evidence was taken at the hearing and both parties stipulated as to the operative facts. Specifically, Debtors' chapter 13 plan as proposed provides for payment in full of all claims over an ACP of sixty months. Debtors admit that they are not paying all projected disposable income into the chapter 13 plan. The chapter 13 plan is feasible as proposed and otherwise not contrary to any provision of the Code. This is Debtors' second chapter 13 case. Debtors successfully completed their first case and received a discharge under § 1328(a). Debtors have accrued unpaid individual income tax liability from 1997–2014.

## CONCLUSIONS OF LAW

This Court recently observed that:

4

> The ordinary-meaning rule is the most fundamental semantic rule of interpretation. It governs constitutions, statutes, rules, and private instruments . . . . If possible, every word and provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored . . . it is no more the court's function to revise by subtraction than by addition.[6]

Under this rule of statutory interpretation, Debtors posit that the Court must adhere to the text of § 1325(b)(1) that, once Debtors propose to pay all of their disposable income over the applicable commitment period, *or* propose to pay unsecured claims in full, the Court has no discretion but to confirm the chapter 13 plan.[7] Further, Debtors argue that the Trustee cannot cite to any Bankruptcy Code provision that would allow the Court to contradict § 1325(b)(1) by including conditions to receive a discharge.[8]

There is no controlling precedent in this Circuit other than an unreported District Court decision affirming this Court in rejecting a similar argument made by chapter 13 debtors in another case. *See* ***In re Molina***, No. SA-14-CA-926, 2015 WL 8494012 (W.D. Tex. December 10, 2015) (finding that, under § 105(a) the court is authorized to issue any order to carry out the provisions of the Code, including additional conditions on confirming a plan). In ***Molina***, the District Court found that meeting the requirements of chapter 13 plan confirmation does not preclude the bankruptcy court from requiring conditions such as full payment of unsecured creditors where the debtors have additional income not being utilized to fund their plan. ***Id***. at *2. The District Court in ***Molina*** noted that the debtors had no reason to complain about the Court

---

[6] ***In re WBH Energy, L.P.*** (jointly consolidated under Bankruptcy No. 15-10003-HCM), 2016 WL 3049666 (Bankr. W.D. Tex. May 20, 2016) (J.Mott)(citing Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts*, pp. 69, 174 (Thomson/West, 2012)).

[7] Section 1325(b)(1) states that:
If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

imposed conditions because the debtors received exactly what they asked for—confirmation of their chapter 13 plan—albeit with conditions. *Id*. Further, the District Court stated that it was not an abuse of discretion to require the debtors to pay all unsecured claims in full as a condition of discharge where the debtors were not dedicating all of their excess income for payment under the plan. *Id*.[9]

Courts outside this District and at least one treatise[10] find that, once § 1325(b)(1) is satisfied by paying all disposable income through the plan or paying 100% of all unsecured claims, a court may not impose additional conditions when confirming a plan. In *In re Bailey*, the trustee argued that § 1325(b)(1) can be read to require a debtor to pay all claims in full *and* dedicate all disposable income to payment of claims through the plan because § 1325(b)(1) may be read in the conjunctive. No. 13-60782, 2013 WL 6145819, at *1, *5 (Bankr. E.D. Ky. 2013)(emphasis added). Further, the trustee suggested that § 1325(b)(1)(A) does not apply when a trustee objects to a plan. *Id*. at *2. Like the *Bailey* court, this Court does agree that the plain language of the statute only requires full payment of all claims or all disposable income being paid over the ACP. Further, the argument that § 1325(b)(1)(A) does not apply to a standing trustee is incorrect. Also, the trustee argued that notwithstanding the plain language of § 1325(b)(1), as a matter of public policy, a debtor could be compelled to pay all of the debtor's disposable income into a plan because creditor claims are protected by being paid earlier. *Id*. at *6.

The issue in *Bailey* was whether the debtors could be compelled to increase their plan payment when two 401(k) loans were paid off during the pendency of the chapter 13 case. The

---

[9] *Cf. In re Walker*, 165 B.R. 994, 1000 (E.D. Va. 1994)(finding that under § 105(a) a court may impose conditions as a basis for confirming a chapter 11 plan).

[10] *See* 8 *Collier on Bankruptcy* ¶ 1325.11[3] (16th Ed. 2015)( "… the trustee cannot demand that the debtors devote all of their projected income each month in order to pay them more quickly.")

debtors proposed a "stair step" increase when the first loan was paid off, but not for the second loan. In *Bailey*, the court observed that since 1984 Congress has amended § 1325(b) five times. Further, over this time, the *Bailey* court noted that Congress has not substantially amended § 1325(b)(1). *Id*. The *Bailey* court found that the plain language of § 1325(b)(1) required either payment of all projected income over the term of the plan or payment of unsecured claims in full, not both. *Id*. The court noted that had Congress wanted to change this requirement, it could have done so when it amended § 1325(b). *Id*.[11] Finally, the *Bailey* court rejected the trustee's argument that the debtors should be required to pay off unsecured creditors sooner as a matter of public policy. *Id*. at *6. The court found that public policy cannot override the plain meaning of the statute. *Id*.

The court in *In re Richall*, noted that post-BAPCPA, Congress differentiated between below and above median debtors. 470 B.R. at 249.[12] In doing so, Congress required an above median debtor to propose a plan length of sixty months, unless unsecured creditors could be paid in full prior to conclusion of the sixty month period. *Id*. Conversely, the court stated that Congress did not change the requirement that a below median debtor could propose a plan longer than three years for cause shown. *Id*.[13] The *Richall* court held that in cases where a below median debtor has the ability to pay all unsecured claims in full either before or at the end of the three year period under the plan, "cause" under § 1329 cannot be shown to extend the plan beyond the three year period because no cause could exist. *Id*.

The *Richall* court held that the same analysis does not apply to above median debtors:

---

[11] The *Bailey* court also noted that the Supreme Court in *Hamilton v. Lanning*, 560 U.S. 505 (2010), in dictum held that a chapter 13 debtor is only required to pay unsecured creditors in full or all projected disposable income over the duration of the plan.

[12] The debtors in *Richall* proposed a 60 month plan, but had additional disposable income that could have paid all claims in full in 30 months.

[13] Section 1322(d)(2) states that "…the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years."

> Section 1325(b) was substantially changed by BAPCPA to create a bright line test to determine whether a debtor is committing sufficient income to the plan. *In re Jones,* 374 B.R. 469, 469 (Bankr. D.N.H. 2007). ''Section 1325(b)(2) was amended to alter the method of determining a debtor's income and § 1325(b)(3) was added to require above median debtors to calculate their reasonably necessary expenses using the means test formula in § 707(b)(2)(A) and (B).'' *Id.* Section 1325(b)(1) requires compliance with subsection (A) or (B), but not both. *Jones,* 374 B.R. at 469. Accordingly, above median debtors now have an election to either pay all of their disposable income for five years, or until creditors are paid in full, § 1325(b)(1)(B), or to pay less than their disposable income over five years, if such lower payments will pay unsecured creditors in full. 11 U.S.C. § 1325(b)(1)(A). The Debtors' Plan provides for payment of all unsecured claims in full during a five year term through payments of approximately one-half of their disposable income. Thus, the Debtors' Plan complies with § 1325(b)(1)(A). While the Debtors could pay off their unsecured creditors in a shorter period of time if they contributed all of their monthly disposable income to plan payments, they are not required to do so under the plain unambiguous language of the Bankruptcy Code.
> *Id*.

The trustee in ***Richall*** argued that it was bad faith to pay unsecured claims over 60 months when there was disposable income to pay claims in full much earlier. *Id*. at 248. The court found that where a debtor meets the requirements for confirmation under § 1325(b)(1), it is not bad faith under § 1325(a)(3) to pay claims over 60 months where claims could be paid sooner. *Id*. at 249–50.[14]

The Court agrees with the ***Bailey*** and ***Richall*** courts that, under a statutory analysis, a debtor can either propose full payment of unsecured claims or payment of all disposable income over an ACP of 60 months, but the debtor is not required to do both. It is not bad faith to pay claims over a period of 60 months when there is excess disposable income to pay them sooner. Section 1325(b)(1) only requires payment in full of all unsecured claims or payment of all projected disposable income over the ACP. In opposing the Debtors' chapter 13 plan, the Trustee is acting in her capacity to serve the interests of all creditors and ensure that all creditor claims

---

[14] The failure to pay all disposable income through the plan has been found by some courts not to be "bad faith" under § 1325(a)(3). *See **In re Johnson***, No. 10-03184, 2011 WL 1671536, at *4 (Bankr. N.D. Iowa 2011)(holding that it is not bad faith to make payments that are less than the debtor's projected disposable income). The Trustee does not allege bad faith under § 1325(a)(3) in her Objection.

are paid. *See In re Liles*, 292 B.R. 138, 139–40 (Bankr. E.D. Tex. 2002)(holding that the chapter 13 trustee has a responsibility to represent the interest of all creditors and in that capacity may object on the behalf of creditors). The Fifth Circuit has noted that a trustee has a broad array of powers and duties, including objecting to plans where the trustee believes that the interests of creditors are not being adequately protected. *See Barron v. Countryman*, 432 F.3d 590, 594 (5th Cir. 2005) ("The trustee in Chapter 13 exists to preserve the bankruptcy estate for creditors.").

Additionally, this Court observed that "the heart of the BAPCPA's reforms is to ensure that debtors repay creditors the maximum they can afford." *In re Pautin*, 521 B.R. 754, 762 (Bankr. W.D. Tex. 2014) (citing H.R.Rep. No. 109–31(I), p. 2, 2005 U.S.C.C.A.N. 88, 89).[15] The Fifth Circuit has held that:

> Section 521(3) requires the debtor to cooperate with the trustee, and § 1302(b) imposes duties on the trustee, including the duty to investigate the debtor's financial affairs under § 704(4). Based upon the trustee's investigation of the debtor's financial affairs, the trustee makes a decision to support or oppose confirmation of the Chapter 13 plan. If the trustee objects to the plan confirmation, the court may not approve the plan unless it "provides that *all* of the debtor's projected disposable income to be received [during the plan] will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B) (emphasis added).

*In re Cortez*, 457 F.3d 448, 457 (5th Cir. 2006).

While *Cortez* was a § 707(b) case in which the court had to examine the requirements for "substantial abuse" *Cortez* suggests that the Fifth Circuit believes that a chapter 13 trustee does have a role in evaluating cases for confirmation where a debtor is not paying all of the debtor's disposable income. In this case, the Trustee is not arguing that § 1325(b)(1) does not apply. Rather, the Trustee is asking the Court to place conditions on confirming the Debtors' chapter 13 plan.

---

[15] *See also Ransom v. FIA Card Ser., N.A.*, 562 U.S. 61 (2011) (finding under the means test that debtors should pay their creditors the maximum they can afford).

Debtors argue that the Court may not impose any conditions beyond the plain language of § 1325(b)(1), and that the Court must confirm Debtors' Plan as proposed. In *Law v. Siegel*, 134 S. Ct. 1188 (2014), the Supreme Court unanimously found that the Ninth Circuit was incorrect in affirming the decision of the bankruptcy court that a court could surcharge the debtor's exempt property under the court's § 105 equitable powers for the debtor's misconduct regarding bad faith litigation. The trustee in *Law v. Siegal* had sued the debtor regarding a fictitious loan and fraudulent second deed of trust the debtor had asserted existed against his home as a means to eliminate any equity in the debtor's house and remove any prospect that the trustee would attempt to liquidate the exempted home for the benefit of creditors. *Id*. at 1193. The litigation took five years and hundreds of thousands of dollars in litigation costs. *Id*. The bankruptcy court granted the trustee's motion to surcharge the debtor's exempted home for $75,000 to compensate the trustee for the exorbitant litigation costs. *Id*. The bankruptcy court found that, pursuant to its equitable powers under § 105, it had the authority to surcharge otherwise exempt property. *Id*. Justice Scalia found that the surcharge contravened § 522, which determines exemptions in a debtor's property and precludes further attempts to use exempted property for the satisfaction of a debtor's creditors. *Id*. at 1195. The Court further held the bankruptcy court's ruling pursuant to § 105 exceeded the court's inherent equitable powers by contravening the specific provisions of § 522 regarding a debtor's otherwise valid exemption of his home. *Id*. at 1196.[16]

The Court finds that it is not contravening § 1325(b)(1) by imposing conditions on confirmation of the Debtors' Plan. The Court could confirm the plan with an ACP of 60 months with less than all disposable income being paid through the Plan. The conditions are that Debtors

---

[16]The court in *In re Saldana*, 531 B.R. 141, 161 (Bankr. N.D. Tex.), *aff'd in part, remanded in part*, 534 B.R. 678 (N.D. Tex. 2015), held that under *Law v. Siegel*, the court could not deny an amendment to a change of homestead exemption in response to litigation, because it would otherwise deny the debtor a claim of exemption. While the court could have found that the change in homestead exemption was in bad faith, the *Saldana* court found it was compelled not to use its equitable powers in disallowing the change in homestead exemption. *Id*.

must pay all claims in full to receive a chapter 13 discharge and that Debtors cannot modify the Plan to less than 100% distribution to creditors. Like the debtors in *Molina*, the Debtors will receive precisely what they sought at their confirmation hearing—confirmation of their chapter 13 plan with an ACP of 60 months—with the added condition that their Plan remain at a 100% distribution to all creditors.

## CONCLUSION

The Court will grant the Trustee's Objection to the Debtors' Chapter 13 Plan. As such, the Court finds that the condition that the Debtors' Plan remain a 100% distribution to unsecured creditors in order to receive a chapter 13 discharge does not violate § 1325(b)(1). Further, the Plan may not be amended, if confirmed with a 60 month ACP, unless all unsecured claims are paid in full. Debtors have fourteen (14) days from entry of this Memorandum Opinion and Order to propose a new Chapter 13 Plan or the case shall be dismissed.

IT IS THEREFORE ORDERED that the Trustee's Objection to Confirmation of Chapter 13 Plan GRANTED, subject to the Debtors having fourteen (14) days from entry of this Memorandum Opinion and Order to propose a new chapter 13 plan or the case shall be dismissed.

All other relief is DENIED.

# # #